IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**PATRICK KING,** :
         **Plaintiff** :     **Civil No. 1:11-CV-1112**
  :
**v.** :
  :
**MANSFIELD UNIVERSITY OF** :
**PENNSYLVANIA,** *et al.***,** :
  :     **Judge Sylvia H. Rambo**
        **Defendants** :

# M E M O R A N D U M

In this civil action, Plaintiff, a former student and employee of Defendant Mansfield University, alleged that Defendant Mansfield University failed to take appropriate action regarding sexual harassment to which he was subjected by another employee, in violation of Title VII of the Civil Rights Act of 1964 (Count I), and that two professors failed to accommodate his depression resulting therefrom, in violation of Title II of the Americans with Disabilities Act of 1990 (Count VI) and Section 504 of the Rehabilitation Act of 1973 (Count VII), as well as several state law causes of action arising under the Pennsylvania Human Relations Act (Count II) and the Pennsylvania Fair Educational Opportunities Act (Counts III, IV, and V). On July 28, 2014, the court entered summary judgment in favor of Defendants on each of Plaintiff's claims after finding that each claim was barred by the applicable statute of limitations, dismissed Plaintiff's Section 1983 claim against the unidentified defendants, and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. Presently before the court is Plaintiff's motion for reconsideration that invokes Federal Rule of Civil Procedure 59(e), which raises a multitude of issues, many of which have been addressed by the court. For the following reasons, the court concludes that Plaintiff's arguments are without merit and will deny the instant Rule 59(e) motion.

I.        **Background**

The court presumes the parties' familiarity with the background of this litigation, and a detailed account has been set forth at length in the court's memorandum accompanying its order granting Defendants' motion for summary judgment. *See generally King v. Mansfield*, Civ. No. 11-cv-1112, 2014 WL 3734551 (M.D. Pa. July 28, 2014). Accordingly, the court will only set forth the most pertinent portions of the factual and procedural history that justify its decision to deny the instant motion for reconsideration.

A.        **Relevant factual background**

The claims in this case are based upon the dual status of Plaintiff, Patrick King, as both a former student and former employee of Defendant Mansfield University ("Defendant Mansfield"), a state university that is part of the Pennsylvania State System of Higher Education ("PASSHE"). Plaintiff enrolled as a student of Defendant Mansfield in January 2001 and began a work-study job on February 16, 2001, in which capacity he was employed until April 26, 2002.

Regarding his Title VII sexual harassment claim, in June 2001, John Estep ("Estep"), a maintenance worker employed by Defendant Mansfield, began a course of conduct that Plaintiff contends qualified as sexual harassment. While the details of Estep's advances are objectionable, especially the instance on which Estep grabbed Plaintiff's genitals at an unspecified time, they need not be repeated herein. Relevant to the instant motion, Estep resigned from the university on May 2, 2003.

Regarding his ADA and Rehabilitation Act claims, Plaintiff testified that he experienced issues with two professors in 2004, namely Dr. Mahmoud Gaballa, who was the instructor for Business Policy, and Dr. Bruce Carpenter, who was the instructor for Money and Banking, both of whom issued to Plaintiff failing grades for those courses. Plaintiff admitted that he missed a significant number of

2

classes, for which he inconsistently presented notes from physicians asking that his absences be excused, allegedly due to his suffering from depression. Both Drs. Carpenter and Gaballa testified that Plaintiff failed to make up missed work or missed exams even though they permitted Plaintiff to do so and that they gave Plaintiff the materials he failed to receive due to his frequent absences.

After failing and being denied grades of "Incomplete" for both courses, Plaintiff petitioned Defendant Mansfield to have his grades on these two courses changed from failing to passing. Defendant Mansfield held a hearing on June 9, 2004, regarding Plaintiff's request, which proceeded despite Plaintiff's failure to attend. Both Drs. Gaballa and Carpenter explained the bases for their decisions to deny Plaintiff's requests for grades of Incomplete. The reviewing board ultimately made the unanimous recommendation that the grades should stand as initially received after finding that Plaintiff was deficient in both his attendance and performance.

### B.   Procedural posture

On September 15, 2004, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), which asserted a failure to accommodate charge but did not allege sexual harassment. The complaint was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff's affidavit, submitted in opposition to Defendants' motion for summary judgment, provided that, during a fact-finding conference on January 28, 2005, Plaintiff's attorney raised sexual harassment as an issue, which was included in a retaliation questionnaire signed January 31, 2005, and was included in an amended complaint filed with the PHRC on May 16, 2005. On August 12, 2010, the PHRC issued its findings, determining that probable cause did not exist to credit the allegations of unlawful discrimination. On March 8, 2011, Plaintiff was sent notice

that the EEOC adopted the PHRC's findings and provided Plaintiff with notice of his right to sue.

Plaintiff initiated this action on June 9, 2011, and Defendant Mansfield filed its answer on September 7, 2011. With leave of court, Plaintiff filed an amended complaint, adding PASSHE and two unidentified individuals as defendants and asserting one additional count, a Section 1983 cause of action against the unidentified defendants. Defendants filed an answer to the amended complaint on August 2, 2013. On April 14, 2014, Defendants filed a motion for summary judgment, arguing that Plaintiff's claims under Title VII, the ADA, and the RA were each barred by the applicable statutes of limitations and that the facts of record were otherwise insufficient to establish Plaintiff's hostile work environment claims. The motion became ripe on June 24, 2014.

## C.   **Motion for summary judgment**

On July 28, 2014, the court granted Defendants' motion in its entirety. As to Plaintiff's Title VII claim, the court held that the statute of limitations had expired, explaining its reasoning as follows:

> There was no allegation of hostile work environment in the original EEOC complaint and a claim of hostile work environment does not logically flow from a claim of disability discrimination. Because the final instance of alleged sexual harassment occurred, at the latest, on May 2, 2003, and because the charge first containing any mention of sexual harassment was filed over two years later on May 13, 2005, the court finds the conduct that Plaintiff contends created a hostile work environment is beyond the statute of limitations and that the amended charge to the PHRC does not relate back to the date of the initial charge. More importantly, the court finds that Plaintiff has failed to demonstrate that equitable tolling is otherwise warranted. Accordingly, the court concludes that the undisputed facts of record clearly establish that any complaint of sexual

> harassment is barred by the statute of limitations and that
> Defendants are entitled to judgment as a matter of law on
> Plaintiff's Title VII claim set forth at Count I.

*King*, 2014 WL 3734551 at *11.  With regard to Plaintiff's ADA and Rehabilitation

Act claims, the court similarly concluded that the statute of limitations had expired,

explaining its reasoning as follows:

> The court concludes that, because Plaintiff filed his federal
> lawsuit alleging claims under the ADA and RA seven years
> after the final act of alleged discriminatory conduct, his
> claims are beyond the applicable two-year statute of
> limitations.  Moreover, Plaintiff has failed to establish that
> this court should toll the applicable statute of limitations on
> the basis of parallel proceedings before a[n] administrative
> body with concurrent jurisdiction.  Accordingly, because
> Plaintiff's ADA and RA claims are time barred,
> Defendants' motion for summary judgment pertaining to
> Counts VI and VII will be granted.

*Id.* at *14.  Because the court dismissed each claim over which the court had federal

question jurisdiction, the court declined to exercise supplemental jurisdiction over

Plaintiff's remaining state law claims and dismissed Counts II, III, IV, and V from

the action pursuant to 28 U.S.C. § 1367(c)(3).  *See id.* at *14-15.  Lastly, the court

dismissed from the action the unidentified defendants due to Plaintiff's failure to

make known the true identity of the individuals despite the lengthy period of

discovery, in accordance with the procedure utilized by the district court in *Blakeslee*

*v. Clinton County*, Civ. No. 07-cv-1364, 2008 WL 4372924, *6 (M.D. Pa. Sept. 22,

2008), *aff'd* 336 F. App'x 248 (3d Cir. 2009).  *See King*, 2014 WL 3734551 at *1

n.1.

### D.   The instant motion

On August 21, 2014, Plaintiff filed the instant motion for

reconsideration pursuant to Federal Rule of Civil Procedure 59(e), in which he

contends that the court made numerous errors warranting relief.  Specifically, Plaintiff argues that the "[c]ourt has committed a clear error of law in granting Summary Judgment to the Defendants on the **merits** of Plaintiff King's ADA and Rehabilitation Act claims because the Defendants never raised the merits of these claims in its Motion for Summary Judgment nor in its supporting Briefs."  (Doc. 88-1, p. 1 of 22 (emphasis in original).)  Next, Plaintiff acknowledges that the court correctly held that the Pennsylvania statute of limitations and tolling rules apply to Plaintiff's ADA and RA claims but argues that the court "committed a clear error of law both in its selection of the right statute of limitations to borrow and in its application of Pennsylvania's tolling rules." (*Id.* at p. 3 of 22.)  Plaintiff next argues that the court "committed a clear error of law by rejecting Plaintiff King's argument for tolling of the statute of limitations on Plaintiff's Title VII claim" (*id.* at p. 6 of 22), and that the court should have found "that the statute of limitations commenced running on Plaintiff's Title VII claim on May 2, 2004" (*id.* at p. 10 of 22).  Assuming that the statute of limitations began running on May 2, 2004, Plaintiff next argues that the court committed clear error in holding that Plaintiff did not act within the applicable statute of limitations on his Title VII claim.  (*See id.* at p. 11 of 22.)  Plaintiff also argues that the court "committed a clear error of law" by rejecting his suggestion that the court "should apply the Latin Maxim *Commondum Ex Injuria Sua Nemo Habere Debet.*" (*Id.* at p. 13 of 22.)  Lastly, Plaintiff argues that the court erred in dismissing Plaintiff's Section 1983 claims.  (*Id.* at p. 15 of 22.)  Defendants filed their response in opposition on September 8, 2014.  (Doc. 90.)  The motion has been adequately briefed and is appropriate for consideration.

II.        **Legal Standard**

Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct manifest errors of law or fact in a prior decision of the court. *See United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Reaves v. Pennsylvania State Police*, Civ. No. 09-cv-2549, 2014 WL 486741, *3 (M.D. Pa. Feb. 6, 2014) (quoting *Rohrbach v. AT&T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). Reconsideration of a judgment is an extraordinary remedy, and courts should grant such motions sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

It follows from the remedial purpose of a Rule 59(e) motion that the standard of review relates back to the standard applicable in the underlying decision. *See Fiorelli*, 337 F.3d at 288. Accordingly, when a motion for reconsideration challenges the court's decision to grant or deny summary judgment, the standard set

forth in Federal Rule of Civil Procedure 56 guides the analysis.  Relief may be granted if the materials related to the summary judgment motion — including the pleadings, discovery materials, and affidavits – "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must consider all facts in the light most favorable to the nonmoving party to determine whether a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *International Raw Materials Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990).  It is through this lens that the court must address Plaintiff's instant motion.

### III.       Discussion

Plaintiff first argues that the "[c]ourt has committed a clear error of law in granting Summary Judgment to the Defendants on the **merits** of Plaintiff King's ADA and Rehabilitation Act claims because the Defendants never raised the merits of these claims in its Motion for Summary Judgment nor in its supporting Briefs." (Doc. 88-1, p. 1 of 22 (emphasis in original).)  Plaintiff argues that the court has not complied with Rule 56(f)(2) because it did not give Plaintiff an opportunity to address the merits of the ADA and RA claims.  (*Id*. at p. 2 of 22.)  Plaintiff's argument in this regard is misplaced and without merit.

In appropriate circumstances, a district court may enter summary judgment *sua sponte*.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Given the potential unfairness of this practice, however, the court must first give the targeted party appropriate notice and a chance in accordance with the rules to present its evidence on the essential elements of the claim or defense if granting the motion on grounds not raised by a party.  *See* Fed. R. Civ. P. 56(f)(2).

The court did not commit a clear error of law by granting Defendants' motion for summary judgment.  In their motion for summary judgment, Defendants argued that Plaintiff's claims under the ADA and RA were barred by the applicable statute of limitations.  (Doc. 66, p. 20 of 33.)  Plaintiff argued in response that the court should toll the statute of limitations applicable to the claims.  (Doc. 78, p. 27 of 35.)  The court granted summary judgment based on its finding that Plaintiff's claims were barred by the statute of limitations.  *King*, 2014 WL 3734551 at *14 ("The court concludes that, because Plaintiff filed his federal lawsuit alleging claims under the ADA and RA seven years after the final act of alleged discriminatory conduct, his claims are beyond the applicable two-year statute of limitations. . . . Accordingly, *because Plaintiff's ADA and RA claims are time barred, Defendants' motion for summary judgment pertaining to Counts VI and VII will be granted*.").  Thus, the court granted summary judgment on Plaintiff's ADA and RA claims on the basis raised by Defendants and responded to by Plaintiff.  Plaintiff's first claim of error in his motion for reconsideration is, therefore, entirely without merit and affords him no relief.

Plaintiff next argues that the court committed clear error when it rejected Plaintiff's argument that the statute of limitations on his ADA and RA claims did not commence to run until the PHRC notified Plaintiff that his case was closed.  (Doc. 88-1, p. 3 of 22.)  This is essentially the same argument raised by Plaintiff in opposition to Defendants' motion for summary judgment (*see* Doc. 78, p. 27 of 35) and addressed by the court.  To remind Plaintiff, the court referred to the well-settled principle that "[n]either Section 504 RA claims nor Title II ADA claims require exhaustion" of administrative remedies and that pursuing relief in a forum with concurrent jurisdiction, such as the PHRC, does not provide grounds to toll the

statute of limitations for filing a complaint with the EEOC. *King*, 2014 WL 3734551 at *14.

    After citing to the Pennsylvania Legislature's statement regarding state discrimination claims that are required to be submitted to the PHRC, Plaintiff now states, "We believe that the Supreme Court of Pennsylvania, *if presented with the issue*, would hold that Plaintiff King's ADA and Rehabilitation Act claims were stayed while his discrimination complaint was pending before the Pennsylvania Human Relations Commission." (Doc. 88-1, p. 4 of 22 (emphasis supplied).) Plaintiff's belief hardly merits discussion. First, as stated, this is essentially the same argument already presented to the court in addressing the motion for summary judgment, and a motion for reconsideration is not an appropriate forum for rehashing the same unsuccessful argument so that Plaintiff can take another bite at the proverbial apple. Second, Plaintiff is not a soothsayer and his anticipation of what the Pennsylvania Supreme Court would do "if presented with the issue" is far from clear law of which the court made an error. Third, the Third Circuit has expressly applied the two-year statute of limitations from 42 Pa. C.S. § 5524 to an ADA action. *Braun v. Gonzales*, 557 F. App'x 176, 179 (3d Cir. 2014). Fourth, the "line of Pennsylvania cases" cited by Plaintiff, the youngest of which is a Common Pleas case over four decades old and none of which is of the Pennsylvania Supreme Court, are readily distinguishable. The sole authority for the principle relied on by Plaintiff, *i.e.,* "where a plaintiff has another case, based upon the same facts, pending in the same Court or another Court, it tolls the statute of limitations and the statute does not begin to run until final adjudication of the pending case" (Doc. 88-1, p. 4 of 22), is derived from a single Pennsylvania Superior Court[1] case, *Sattler v. Opperman*, 14

---

[1] The court assumes Attorney Pinskey's improper citation to be a product of oversight when

(continued...)

Pa. Super. 32 (Pa. Super. Ct. 1900). *See Menefee v. Columbia Broad. Sys. Inc.*, 54 Pa. D. & C. 2d 341, 343-44 (Pa. Com. Pl. Mont. Cnty. Jan. 3, 1972); *Caimaichelo v. Pinkston*, 41 Pa. D. & C. 2d 727, 732 (Pa. Com. Pl. Del. Cnty. Oct. 28, 1966); *Vaughn v. Roulin*, No. 213 Mar. T. 1957, 54 Sch. L. R. 8, 9 (Pa. Com. Pl. Sch. Cnty. Mar. 3, 1958). In *Sattler*, the Pennsylvania Superior Court held that the statute of limitations did not bar an action for conversion by plaintiff-lessee and concluded that the conversion of the lessee's property occurred after the ejectment action. Indeed, *Sattler* did not involve a situation where, as here, an accrued action could have properly been asserted before a court with concurrent jurisdiction over the claim.

As explained in the court's July 28, 2014 memorandum, unlike the ADA and RA, the PHRA requires that a discrimination claim be filed with the PHRC before proceeding to federal court. Neither the ADA nor the RA require such a prerequisite. *See King*, 2014 WL 3734551 at *14 n.7. Therefore, unlike a claimant proceeding pursuant to the PHRA, an ADA or RA plaintiff may proceed directly to federal court. *See id.* Thus, the provision of the PHRA cited by Plaintiff directing that the lawsuit be initiated within two years after notice of the complaint's closing by the PHRC (Doc. 88-1, p. 3 of 22 (citing 43 Pa. Stat. Ann. § 962(c)(2)), is inapplicable to a claim that can entirely bypass an administrative forum.

Moreover, the court rejects Plaintiff's argument that the Pennsylvania Supreme Court would hold that an ADA and RA claim is stayed pending disposition of a PHRA claim before the PHRC based on the inclusion of the word "liberally" in the statute. (Doc. 88-1, p. 5 of 22.) While a statute's inclusion of the term "liberal" may indeed signify the legislative desire to provide broader coverage, it does not

---

[1](...continued)
he cited *Sattles v. Opperman*, 14 Pa. 32 (1900), a citation denoting a Pennsylvania Supreme Court decision, rather than *Sattler v. Opperman*, 14 Pa. Super. 32 (Pa. Super. Ct. 1900), a citation denoting a Pennsylvania Superior Court decision. (*See* Doc. 88-1, p. 4 of 22.)

operate as a term mandating that the court disregard the otherwise applicable statute of limitations. For all these reasons, the court rejects Plaintiff's argument that the court committed a clear error of law by holding that his pursuit of relief in a forum with concurrent jurisdiction, such as the PHRC, did not provide grounds to toll the statute of limitations. Accordingly, Plaintiff's motion will be denied in this regard.

Plaintiff next argues that the court committed a clear error of law by concluding that Plaintiff's Title VII sexual harassment claim was untimely, a conclusion that the court reached after rejecting Plaintiff's argument that the statute of limitations on his Title VII sexual harassment claim was tolled until May 2, 2004 due to Defendant Mansfield's violation of the posting requirements set forth at 42 U.S.C. § 2000e-10. (*See* Doc. 88-1, pp. 6-10 of 22.) This, again, is an argument previously raised by Plaintiff and addressed by the court. *See King*, 2014 WL 3734551 at *11.

It is well-settled that under both Title VII and the PHRA, employers are required to post, in conspicuous places, notices of fair employment practices, including descriptions of pertinent provisions of the statutes. *See* 42 U.S.C. § 2000e-10(a); 43 Pa. Stat. Ann. § 955(j); 16 Pa. Code § 43.1. An employer's "[f]ailure to post the required notice will toll the running of the [limitations] period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the [statute]." *Bonham v. Dresser Indus. Inc.*, 569 F.2d 187, 193 (3d Cir. 1977). In addressing this argument, the court found that the uncontradicted evidence of record established that equitable tolling for failure to post notice was not warranted and explained its reasoning as follows:

> Here, Plaintiff has not alleged any facts sufficient to infer
> deception, misconduct, or misleading of Plaintiff on the
> part of Defendant Mansfield warranting the application of
> equitable relief. Plaintiff simply states in his affidavit

> submitted in opposition to Defendants' motion for
> summary judgment that neither the student handbook nor
> Defendant Mansfield's written non-discrimination policy
> and procedure satisfied the positing requirements of 42
> U.S.C. § 2000e-10(a).  Defendants have submitted
> uncontradicted evidence, in the form of a declaration
> executed by Molly Bailey, to establish that, during the time
> Plaintiff was employed by Defendant Mansfield, Defendant
> Mansfield posted the notices required by Title VII in
> conspicuous places where notices to employees and
> applicants for employment were customarily posted,
> including one such notice in the staff lounge next to the
> Human Resources Office in Alumni Hall.  (Doc. 81-1, ¶ 3.)
> Accordingly, Plaintiff has failed to carry his burden and
> demonstrate that equitable tolling is warranted.

*King*, 2014 WL 3734551 at *11.  In the instant motion, Plaintiff does not offer any

evidence to the contrary, let alone evidence that was newly discovered and

previously unavailable.  It is irrelevant that the Password, a *student* handbook, did

not comply with the EEOC employment discrimination posting requirements;

indeed, the posting requirements are aimed at ensuring that employees are advised

of, *inter alia*, information pertinent to the filing of an employment discrimination

complaint.  *See* 42 U.S.C. § 2000e-10(a).  The evidence of record clearly establishes

that the notice was posted in a staff lounge, a location frequented by full- and part-

time employees including work-study students.  Without evidence to the contrary,

the court has no reason to disregard the declaration of Molly Bailey.

Moreover, it is irrelevant whether Bailey personally complied with the

posting requirement of 42 U.S.C. § 2000e-10(a) (*see* Doc. 88-1, p. 8 of 22); all that

matters is that the notice was posted in a conspicuous place upon Defendant

Mansfield's premises.  To the extent Plaintiff's argument could be interpreted as an

attempt to have the court discredit Bailey's declaration, Plaintiff is reminded of the

familiar summary judgment requirement that, once the movant has shown that there

is an absence of evidence to support the nonmovant's claims, the nonmovant must offer "more than a scintilla" of affirmative evidence sufficient to establish the existence of an element essential to his case. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)). Plaintiff has not done this.

Lastly, Plaintiff's argument that "[Defendant Mansfield] has not ruled-out the possibility that people may have taken down the posters to post other material" is unavailing, and the case he cites in support is readily distinguishable. In *Reilly v. Upper Darby Township*, 809 F. Supp. 2d 368, 374-75 (E.D. Pa. 2011), the court found that a dispute existed regarding whether the defendant-employer had posted the required notices at the time when the plaintiff-employee was employed as a police officer due to the testimony from several superiors employed by the defendant. Here, the record contains unequivocal and uncontroverted evidence that the required notice was posted in the staff lounge where other notices were posted at the time Bailey was the Human Services Director, which coincided with Plaintiff's employment at the university. Accordingly, the court concludes that it did not make a clear error of law by rejecting Plaintiff's contention for tolling based on Defendant Mansfield's failure to comply with the EEOC posting requirements, and Plaintiff's motion for reconsideration will be denied in this regard.

Plaintiff's next two arguments, *i.e.,* that the statute of limitations began running on Plaintiff's Title VII claim on May 2, 2004 and that Plaintiff filed his Title VII complaint within 300 days thereof, necessarily fail due to the court's rejection of the aforementioned tolling argument. (*See* Doc. 88-1, pp. 10-13 of 22.) Moreover, this was an issue previously addressed by the court. Specifically, the court concluded:

> Because the final instance of alleged sexual harassment
> occurred, at the latest, on May 2, 2003, and because the
> charge first containing any mention of sexual harassment
> was filed over two years later on May 13, 2005, the court
> finds the conduct that Plaintiff contends created a hostile
> work environment is beyond the statute of limitations and
> that the amended charge to the PHRC does not relate back
> to the date of initial charge.

*King*, 2014 WL 3734551 at *11. Plaintiff has presented no grounds for relief and

has certainly failed to demonstrate that the court made a clear error of law.

Accordingly, Plaintiff's motion for reconsideration will be denied in this regard.

Next, Plaintiff argues that the court committed a clear error of law in

rejecting his suggestion that the court apply the "Latin Maxim" *Commondum Ex

Injuria Sua Nemo Habre Debet*.[2] (Doc. 88-1, p. 13 of 22.) The court previously

addressed this argument and analyzed the facts of *Lake v. Arnold*, 232 F.3d 360 (3d

Cir. 2000), the case cited by Plaintiff in support of his request in both his brief in

opposition to summary judgment and in the instant motion for reconsideration.

Specifically, in its July 28, 2014 memorandum, the court stated:

> In *Lake*, the Third Circuit applied the equitable tolling
> doctrine, but noted the unusual nature of the facts before it.
> *Id.* at 371. In that matter, Elizabeth Lake, a mentally
> retarded woman, sued her family and physicians for having
> sterilized her without her consent – an action taken at the
> behest of her guardian. *Id.* at 371-72. She learned of the
> sterilization years after the procedure after consulting a
> doctor about the possibility of bearing a child. *Id.* The
> court found that "[p]ermitting the tolling provisions of the
> state statute of limitations to bar her cause of action would
> frustrate the federal civil rights laws by barring a remedy to
> a protected person because the guardian, who under state
> law should have sought to vindicate that person, harmed

---

[2] Plaintiff represents that this "maxim" translates as "A wrong doer should not be enabled by law to take advantage of his actions." (Doc. 78, p. 24 of 35.)

her instead." *Id*. at 372.  The Third Circuit remanded the case to the district court, instructing that "equitable tolling might be appropriate . . . where a guardian conspires to deprive a mentally incompetent person of her constitutional and civil rights." *Id*. at 370-71.  The Third Circuit further highlighted that *Lake* was unique, because the plaintiff's mental incompetence at least partially motivated the injury for which she sought recompense and because "[t]he persons, who should have protected [her] because of her retardation, instead harmed her by having her sterilized so that she could not procreate. . . .  In this instance, equitable tolling would promote Congress's intent in enacting §§ 1983 and 1985.  It would give [the plaintiff] the opportunity she was denied when she was sterilized – adequate representation of her interests – and give her a chance to seek a remedy for her injury." *Id*. at 372. Defendant Mansfield, unlike the guardians in *Lake*, had no legal obligation to assert Plaintiff's rights for him.  Plaintiff could have sought a remedy for his injury on his own. Accordingly, the court finds *Lake* to be *sui generis* in its application of federal tolling and inapplicable to the matter *sub judice*.

*King*, 2014 WL 3734551 at *11 n.6.  Moreover, the extent of Plaintiff's injuries does not compel a different result.  (*See* Doc. 88-1, p. 15 of 22.)  The court made no judgment as to Plaintiff's injuries; indeed, it accepted the veracity and accuracy of Dr. Lieberman's expert report as true.  However, the nature and extent of Plaintiff's injuries does not justify tolling a statute of limitations or excusing Plaintiff's delay. The basis of the equitable tolling in *Lake* was that the mentally infirm plaintiff could not assert her rights within the statute of limitations and that her guardian, who had the legal obligation to vindicate her, harmed her instead.  Accordingly, *Lake* is readily distinguishable because, at the very least, Defendant Mansfield had no legal obligation to vindicate Plaintiff's alleged injuries.

Additionally, in an apparent attempt to extend the boundaries of the equitable tolling doctrine, Plaintiff quotes the following language in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1388-89 (3d Cir. 1994):

> We begin by restating the fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing.  <u>This basic principle underlies the equitable tolling doctrine itself.</u>

(Doc. 88-1, p. 14 of 22 (emphasis in original).)  Plaintiff cleverly cuts his quotation short, as the Third Circuit continues to explain:

> To allow a defendant to benefit from the statute of limitations defense *after intentionally misleading the plaintiff with regard to the cause of action, thereby causing the plaintiff's* tardiness, would be "manifestly unjust."

> Against the back-drop of this principle, we are [led] to conclude that *where a defendant actively misleads the plaintiff regarding the reason for the [adverse employment action], the statute of limitations will not begin to run, that is, will be tolled, until the facts which would support the plaintiff's cause of action are apparent, or should be apparent to a person with a reasonably prudent regard for his or her rights.*

*Oshiver*, 38 F.3d at 1389 (emphasis supplied and internal citations omitted).  Indeed, as explained by the *Oshiver* court, the basic principle underlying the doctrine is directly related to the deceptive actions of the defendant.

Moreover, the factual dissimilarities between *Oshiver* and the instant case makes Plaintiff's reliance even more ineffective.  In *Oshiver*, the plaintiff filed a charge of discrimination with the EEOC 440 days after she was terminated from a law firm with the explanation that the firm "did not have sufficient work to sustain her position."  *Oshiver*, 38 F.3d at 1384, 1391.  A year later, she learned that the firm hired a male attorney "shortly after her dismissal . . . to take over her duties."  *Id.* at 1384.  The appellate court found that there were issues of fact as to: (1) whether the

defendant had actively misled the plaintiff when she was told she was terminated because of lack of work; (2) whether she was aware that she was replaced by a male employee, a "critical fact that would have alerted a reasonable person to the alleged unlawful discrimination"; and (3) whether a person in her position with a reasonably prudent regard for her rights would have learned of the alleged discriminatory act. *Id* at 1392. The court determined that, giving the plaintiff the benefit of all reasonable inferences, the allegations were sufficient to raise the possibility of equitable tolling. *Id*. The court recognized that equitable tolling applied in that case because facts were "concealed" from the plaintiff through the defendant's "wrongdoing." *Id*.

Thus, *Oshiver* involved a case in which equitable tolling had been invoked where, unlike here, an employer's active deception of an employee concerning the reason for an employment action lulled the plaintiff into foregoing prompt vindication of her rights. In the instant case, Plaintiff presents no evidence that the facts underlying the cause of action were unknown to him or that he was mislead into abstaining from vindicating his rights. To the contrary, as the court explained, *supra*, the record compels the finding that Defendant Mansfield appropriately posted the notices informing Plaintiff of his rights. While the *Oshiver* court may have stated that the three principal situations in which equitable tolling may be appropriate are not exclusive, *see Oshiver*, 38 F.3d at 1387, the facts of this case do not warrant application of the doctrine. Accordingly, the court concludes that it did not make a clear error of law by rejecting Plaintiff's requested application of *Commondum Ex Injuria Sua Nemo Habere Debet*, and Plaintiff's motion for reconsideration will be denied in this regard.

Lastly, Plaintiff argues that the court committed a clear error of law by dismissing the John Doe Defendants *sua sponte*. Plaintiff's amended complaint asserted a Section 1983 claim against "John Doe and Richard Roe," two unidentified

individuals, who allegedly, while "acting under color of State law pertaining to the administration of police records, intentionally and knowingly conspired together to deprive Plaintiff King of his civil rights by either destroying all police records pertaining to his visit to the Campus Police Department or by failing to make a proper record of that visit with the intent to protect the reputation of the University and/or John Estep and to prevent an investigation of Plaintiff King's allegations from taking place." (Doc. 33, ¶ 124.) As stated in the court's July 28, 2014 memorandum, "[t]he use of John Doe defendants is permissible in certain situations until "reasonable discovery permits the true defendants to be identified." *King*, 2014 WL 3734551 at *1 n.1 (citing *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009)). If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed. *Id.*; *see also Williams v. New Jersey Div. of State Police*, Civ. No. 10-cv-3478, 2012 WL 1900602, *6 (D.N.J. May 24, 2012) (exercising discretion under Rule 21 to dismiss the unnamed entities from the action when the plaintiff failed to properly identify the fictitious defendants). Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. District courts in the Third Circuit have used this Rule to exclude John Doe parties from an action when appropriate. *See, e.g., Blakeslee v. Clinton Cnty.*, Civ. No. 07-cv-1364, 2008 WL 4372924, *6 (M.D. Pa. Sept. 22, 2008), *aff'd*, 336 F. App'x at 250; *Guyton v. Bacher*, Civ. No. 12-cv-0027, 2014 WL 3942813, *5-6 (W.D. Pa. Aug. 12, 2014); *Kabbaj v. Google Inc.*, Civ. No. 13-cv-1522, 2014 WL 1369864, *6 (D. Del. Apr. 7, 2014) (dropping the John Doe defendants pursuant to Rule 21 because of the plaintiff's failure to identify them and because the other claims failed as a matter of law"), *reconsideration denied by* 2014 WL 2042450 (D. Del. May 16, 2014); *Hales v. Fell*, Civ. No. 12-cv-3495, 2013 WL 2256132, *1 n.1 (E.D. Pa. May

23, 2013); *Aponte v. Karnes*, Civ. No. 08-cv-0183, 2008 WL 360879, *1 n.1 (M.D. Pa. Feb. 8, 2008) ("Absent compelling reasons, a district court may dismiss [fictitious] defendants if the plaintiff, after being granted a reasonable period of discovery, fails to identify them."); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (dismissing the John Doe defendants following a year of discovery when the plaintiff failed to identify their proper identities in an amended complaint). If a plaintiff fails to amend the complaint identifying the unnamed John Doe defendants, a court may dismiss those defendants prior to ruling on a summary judgment motion. *Guyton*, 2014 WL 3942813 at *5 (citing *Blakeslee*, 336 F. App'x at 250).

Plaintiff failed to amend the complaint to identify the John Doe Defendants despite the lengthy period of discovery that had been conducted in this matter. Notwithstanding Plaintiff's allegation in his brief that the true identity of the John Doe Defendant is Christine Shegan, the Chief of Mansfield University's Campus Police Department (Doc. 88-1, pp. 15-20 of 22; *see also* Doc. 88-1, p. 3 of 11), her name does not appear on the docket nor in an amended complaint. Unlike a scenario pursuant to Federal Rule of Civil Procedure 4(m) when the court dismisses an action after required notice to the plaintiff when a defendant is not timely served with the complaint, here, the court dropped the John Doe Defendant, who remained unidentified at the time of the motion for summary judgment, pursuant to its authority to do so as a result of her remaining unjoined. Accordingly, the court did not commit a clear error of law by dropping from the action the unidentified John Doe Defendants without providing notice to Plaintiff.

Plaintiff's motion for reconsideration presents a lengthy recitation of facts and speculation, explicitly conceding that Plaintiff never presented to the court the true identity of either John Doe Defendant. (Doc. 88-1, pp. 19-20 of 22

("Plaintiff's Counsel admits to being remiss in not promptly filing the waiver [of service] form.  With all that was going on in this case at that time, that filing was overlooked.").)  Plaintiff apparently attempts to put the fault of his failure on Defendant Shegan for her failure to file a motion to compel his filing.  (*Id.* at p. 20 of 22.)  Plaintiff misses the point entirely.

The court in *Guyton* faced a similar situation with a fictitious defendant identified in the complaint as "John Doe," whose identity was obtained through discovery but who was never properly identified by an amended complaint. 2014 WL 3942813 at *5.  In that case, the pro se plaintiff, the administratrix of the estate of a decedent who was allegedly killed during a standoff with police, named in her complaint two John Doe defendants, both of whom were allegedly employees of the Pennsylvania State Police.  *Id.*  The complaint alleged that John Doe No.1 fired the fatal shot.  *Id.* at *1.  Although discovery revealed the true identity of John Doe No. 1, the plaintiff failed to amend her complaint to properly name the individual as a defendant.  *Id.* at *5.  Notwithstanding its recognition that "a review of the depositions, affidavits, and other exhibits in the record shows [the true identity of] the officer who fired the shot killing [the d]ecedent and is therefore the person identified in the complaint as John Doe No. 1," the district court, pursuant to Federal Rule of Civil Procedure 21, dismissed from the action both John Doe defendants named in the complaint "because the complaint was never amended and neither of the John Doe Defendants were properly served."  *Guyton*, 2014 WL 3942813 at *5.

Here, despite having ample opportunity and reason to do so, Plaintiff never amended his complaint to reflect the true identity of either John Doe Defendant.  "[I]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury," *Arthur v. Maersk Inc.*, 434 F.3d 196, 212 (3d Cir. 2006), and fictitious parties should be dismissed if they are left unidentified

21

at the close of discovery, *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). Moreover, "an action cannot be maintained solely against Doe defendants." *Id.* (citing *Scheetz v. Morning Call Inc.*, 747 F. Supp. 1515, 1534-35 (E.D. Pa. 1990)). In this case, judgment had been granted in favor of each of the properly identified defendants. Indeed, discovery in this matter was closed and the motion for summary judgment was fully briefed; yet no true identities for the fictitious defendants were expressed. Accordingly, Plaintiff's alleged identification of the John Doe Defendant as Shegan provides no relief.

The court recognizes that the instant matter is arguably distinguishable from *Guyton* on the basis that Plaintiff alleges *in his brief* that Shegan was served with the complaint, which was allegedly accepted by defense counsel representing the named Defendants. However, this does not change the fact that the complaint was never amended to properly identify Shegan. Plaintiff was responsible for doing so, not Shegan.

Furthermore, Plaintiff's argument that his failure to identify Shegan should be excused because Shegan was in fact served is unavailing upon consideration of the grounds warranting reconsideration. As stated, the court did not commit clear error of law by dropping from the action the John Doe Defendants because they were not properly identified in an amended complaint at the time discovery was closed or the motion for summary judgment was addressed. Moreover, Plaintiff presents no intervening change in controlling law warranting reconsideration. Plaintiff's argument is likewise unavailing to the extent that it can be interpreted as raising a claim of newly discovered evidence. The youngest document submitted by Plaintiff evidencing Shegan's identity is dated September 12, 2013 (*see* Doc. 88-2, p. 10 of 11), over seven months before Defendants' motion for summary judgment was filed and nearly a year from the date of this memorandum.

This is certainly not newly discovered evidence that was unavailable when the court granted the motion for summary judgment. An unexcused failure to present evidence available at the time of summary judgment does not form a compelling basis to grant a motion for reconsideration. Accordingly, the court concludes that it did not make a clear error of law by dropping from the action the remaining unidentified fictitious defendants and that Plaintiff has presented no newly discovered evidence that was unavailable at the time of summary judgment to justify that the court alter its judgment. For these reasons, Plaintiff's motion for reconsideration will be denied in this regard.

## V.        Conclusion

Plaintiff's motion is predominately comprised of arguments that had been previously raised in his opposition to the motion for summary judgment and addressed by this court, demonstrating that Plaintiff misses the purpose of a motion for reconsideration. In this case, the court rejected Plaintiff's tolling arguments and determined that Plaintiff's lawsuit involving conduct that took place at least seven years prior to the filing of the original complaint was untimely. Plaintiff's instant motion does not demonstrate that the court committed a clear error by granting judgment in Defendants' favor on Plaintiff's claims under the ADA, RA, and Title VII, nor does it demonstrate that the court improperly dismissed the Section 1983 claim against the John Doe Defendants asserted at Count VIII due to Plaintiff's failure to properly identify either John Doe Defendant. Accordingly, the court has little difficulty in denying Plaintiff's motion for reconsideration.

An appropriate order will issue and be docketed separately.

Dated: September 12, 2014                    s/Sylvia H. Rambo
                                             United States District Judge